IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MUSHTAQ and ARIF KHAN,
for themselves and as parents and next friends of
ABDUL QAYYUM KAHN, a minor child,

 Plaintiffs,

v.              No. CV 03-118 JP/RLP

ALBUQUERQUE PUBLIC SCHOOLS,
THE ALBUQUERQUE PUBLIC SCHOOLS
BOARD OF EDUCATION and BRAD WINTER,
in his individual and official capacity,

 Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANT WINTER'S MOTION TO DISMISS**

This is a ruling on Defendant's Motion to Dismiss Defendant Brad Winter, filed February 24, 2003 (Doc. No. 3). Having reviewed the submissions of the parties, the applicable law, and being otherwise fully advised, I find the motion should be granted.

**LEGAL STANDARD**

In ruling on a motion to dismiss made under Fed. R. Civ. P. 12(b)(6), all well-pleaded factual allegations of the complaint are accepted as true and viewed in the light most favorable to the nonmoving party. Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999). All reasonable inferences raised in the pleadings are resolved in favor of the plaintiff. Dill v. City of Edmond, 155 F.3d 1193, 1201 (10th Cir. 1998). "A 12(b)(6) motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his

claim which would entitle him to relief." David v. City and County of Denver, 101 F.3d 1334, 1352 (10th Cir. 1996).

**BACKGROUND**

Plaintiffs' Complaint alleges that Abdul Qayyum Khan (Abdul Qayyum) is a student who receives special educational services at La Cueva High School within the Albuquerque Public Schools (APS). Defendant Brad Winter is an Assistant Principal at La Cueva High School. According to the Complaint, Abdul Qayyum was suspended from school for three days in November 2001 for making verbal threats to another student. A behavioral intervention plan (BIP) was added to his Individualized Education Plan ("IEP"). The BIP specifically identified Defendant Brad Winter as a person whom Abdul Qayyum was to approach for mediation of conflicts he might have with other students.

In late January 2002, Abdul Qayyum was assaulted by another student on school grounds. He reported this to a school counselor the following day. Arif Khan, his mother, also reported the incident. Two days later, Mushtaq Khan, his father, met with Defendant Winter about the incident. No action was ever taken to investigate the incident, identify the assailant, or discipline the assailant.

Several days later, Abdul Qayyum, fearing for his own safety, made a weapon by attaching a razor blade to a plastic ruler. He then reconsidered his actions and gave this ruler to another student who was supposed to dispose of it. However, the other student kept the weapon in his backpack.

On February 7, 2002, Abdul Qayyum, the student in possession of the weapon, and a third student were together during lunch on school grounds. The third student set fire to a trash can.

Defendants called the Albuquerque Police Department to have Abdul Qayyum arrested.  Abdul Qayyum was arrested and handcuffed at La Cueva High School.  Police interviewed Abdul Qayyum before his parents arrived.  After his parents arrived, school officials made no attempt to intervene with police to have Abdul Qayyum's handcuffs removed or to halt the arrest.  Abdul Qayyum was in handcuffs for 1 1/2 to 2 hours. His parents observed their son in handcuffs.  Abdul Qayyum was transported by police to the Juvenile Detention Center and charged with arson and "interference with public officials or general public."

The student in possession of the weapon, who also had disabilities, was also arrested, handcuffed, and transported to the Juvenile Detention Center.  The third student who did not have a disability but who actually set the fire was not arrested, handcuffed, transported to the Juvenile Detention Center, or charged with any crime.  Additionally, school officials prevented police from interviewing the third student until his parents were present.

In March 2002, Abdul Qayyum was threatened by a nondisabled student in class.  At Defendant Winter's direction, Abdul Qayyum was searched for weapons.  The nondisabled student was not searched or disciplined.  Defendant Winter's investigation of the incident included an interview of the nondisabled student, but did not include an interview of Abdul Qayyum until Mr. Khan requested that his son be interviewed.

Abdul Qayyum's peers routinely verbally assaulted, taunted, threatened, and harassed him on the basis of his disability.  Defendants were aware of this ongoing harassment.  Defendant Winter participated in the intentional harassment of Abdul Qayyum.  APS had no disability harassment policy despite guidance from the U.S. Department of Education stating that disability harassment policies and enforcement of such policies were necessary.

Plaintiffs' Complaint alleges that Defendants were deliberately indifferent to the rights of Abdul Qayyum, and that their various acts and failures to act with regard to his rights caused him damages. Relevant to this motion, Plaintiffs allege that Mr. and Mrs. Kahns' actions on behalf of their son amounted to advocacy on behalf of a person with a disability and, therefore, they are protected from retaliation. In addition, Mr. and Mrs. Kahn assert that the manner in which Abdul Qayyum was treated in front of them when he was arrested caused them emotional distress and was in retaliation for their previous and ongoing advocacy on behalf of their son. Plaintiffs' claims for relief include claims for retaliation under the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act.

**DISCUSSION**

Defendant Brad Winter moves for dismissal of the claims against him. Defendant Winter notes that a claim against him in his official capacity is a suit against the institutional Defendants, APS and the APS Board of Education. Thus, he contends that the claims against him in his official capacity are superfluous in light of the claims against APS and the APS Board of Education. As a matter of law, the claims against Defendant Winter in his official capacity are duplicative of the claims against APS and the APS Board of Education. Because Plaintiffs do not dispute that the claims against Defendant Winter in his official capacity should be dismissed, they will be.

Defendant Winter moves for dismissal of the claims against him in his individual capacity on the basis that neither the ADA nor the Rehabilitation Act allow for suits against individual defendants. Plaintiffs counter that both the ADA and the Rehabilitation Act permit claims against individuals for acts of retaliation. The parties appear to agree that individual defendants cannot be

4

sued under the ADA or Section 504 of the Rehabilitation Act for anything other than retaliation. Thus, Brad Winter is entitled to dismissal of all nonretaliation claims brought against him in his individual capacity under the ADA and Section 504.

The remaining issue is whether an individual is a proper defendant for retaliation claims under the ADA or the Rehabilitation Act.  Both the ADA and the Rehabilitation Act prohibit discrimination against persons with disabilities.  Title II of the ADA prohibits such discrimination by public entities with regard to services, benefits, and participation in programs.  42 U.S.C. § 12132.  The Rehabilitation Act prohibits such discrimination by any program or activity receiving federal financial assistance.  29 U.S.C. §§ 794(a).  By their plain language, these statutes apply only to public entities or entities receiving federal financial assistance; they do not apply to individuals and do not give rise to a cause of action against individual employees of those entities.

The ADA has a specific provision stating that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."  42 U.S.C. § 12203.  By its language, this statute appears to prohibit retaliatory conduct by individuals.  However, the greater statutory scheme of the ADA clearly applies only to public entities and provides no remedy against individual defendants.

One court did find that 42 U.S.C. § 12203 gave rise to a cause of action against individual defendants.  *See* Ostrach v. Regents of the Univ. of California, 957 F.Supp. 196, 200 (E.D. Cal. 1997).  That district court looked exclusively at the use of the word "person" in 42 U.S.C. § 12203 and did not address the remedial provisions of the ADA and the overall statutory scheme.

5

There appear to be no other cases in which the reasoning or conclusion of the Ostrach court was followed.  In fact, a court within the same district as the Ostrach court openly disagreed with the holding and analysis in Ostrach and found that the ADA's remedial provisions made clear that there is no individual liability for retaliation under the ADA.  Stern v. California State Archives, 982 F.Supp. 690, 693-94 (E.D. Cal. 1997).  Courts addressing whether the anti-retaliation provision of the ADA gives rise to a cause of action against individuals, with the exception of Ostrach, have uniformly held that individuals are not proper defendants for a claim of retaliation under the ADA.  *See* Baird v. Rose, 192 F.3d 462, 471-72 (4th Cir. 1999) (holding that ADA does not permit retaliation claim against individuals); Key v. Grayson, 163 F.Supp.2d 697, 704 (E.D. Mich. 2001) (holding that ADA creates no individual liability for retaliation); Van Hulle v. Pacific Telesis Corp., 124 F.Supp.2d 642, 646 (N.D. Cal. 2000) (concluding that Congress never intended ADA to create cause of action against individuals for retaliation); Kautio v. Zurich Ins. Co., No. 97-2411-JWL, 1998 WL 164623, at *2 (D. Kan. March 18, 1998) (dismissing retaliation claims against individual defendants under ADA).

The Rehabilitation Act does not expressly prohibit retaliation.  However, the Rehabilitation Act does afford aggrieved persons all the rights set forth in Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*  29 U.S.C. 794a(a)(2).  Title VI, which prohibits race-based discrimination by entities receiving federal financial assistance, has been interpreted as prohibiting retaliation.  See 34 C.F.R. § 100.7.  The language of 34 C.F.R. 100.7(e) states that "[n]o recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual . . . because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this part."  Thus, the language of this regulation,

like the language in the anti-retaliation provision of the ADA, would appear to prohibit retaliatory conduct by individuals.  Nonetheless, the broad statutory schemes of both the Rehabilitation Act and Title VI indicate that there is no individual liability for retaliation.  *See* Hiler v. Brown, 177 F.3d 542, 545-47 (6th Cir. 1999) (holding that individuals are not proper defendants under anti-retaliation provision of Rehabilitation Act);[1] Jackson v. Katy Ind. Sch. Dist., 951 F.Supp. 1293, 1298 (S.D. Tex. 1996) (holding that individual is not proper defendant under Title VI).

I conclude that the ADA and the Rehabilitation Act do not provide a cause of action against individual defendants.  The use of the word "person" in 42 U.S.C. § 12203 and 34 C.F.R. § 100.7 does not reflect congressional intent to impose individual liability for retaliation under either the ADA or the Rehabilitation Act.  The use of the word "person" does not alter the available remedies under the ADA or the Rehabilitation Act.  These statutes were clearly intended to provide a cause of action against public entities and recipients of federal financial assistance.  Thus, Defendant Winter is entitled to dismissal of the claims brought against him individually under the ADA and Section 504 of the Rehabilitation Act.

---

[1] In another context (involving whether an employer of fewer than 15 employees may be held liable under the Rehabilitation Act), the Tenth Circuit disagreed with the Sixth Circuit in Hiler insofar as the opinion relied on the Rehabilitation Act's supposed incorporation of Title VII's definition of "employer."  Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 974-75 (10th Cir. 2002).  However, the court expressly withheld deciding whether the Rehabilitation Act imposes personal liability upon a supervisor, an issue not before it.  Id. at 974 n. 5.

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss Defendant Brad Winter (Doc. No. 3) is GRANTED, and all claims against Defendant Brad Winter in both his official and individual capacities are hereby DISMISSED.

_____
CHIEF UNITED STATES DISTRICT JUDGE