# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MUSHTAQ and ARIF KHAN, for themselves
and as parents and next friend of
ABDUL QAYYUM KHAN, a minor child,

       Plaintiff,

vs.                                                         No. CIV- 03-0118 JB/RLP

ALBUQUERQUE PUBLIC SCHOOLS,
THE ALBUQUERQUE PUBLIC SCHOOLS
BOARD OF EDUCATION and BRAD WINTER,
in his individual and official capacity,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Albuquerque Public Schools Board

of Education's ("APS") Motion to Dismiss Claims for Punitive Damages and Emotional Distress

Damages, filed May 20, 2003 (Doc. 14). The primary issue is whether Title II of the Americans with

Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12132 and Section 504 of the Rehabilitation of 1973

("section 504"), 29 U.S.C. §794(a) allow a plaintiff to recover damages for emotional distress.

Because the Court determines that the Supreme Court of the United States' decision in Barnes v.

Gorman, 536 U.S. 181, 185 (2002), is instructive if not controlling on all issues herein, the Court will

grant APS' motion to dismiss.

## BACKGROUND

The Plaintiffs' Complaint asserts claims pursuant to the ADA and Section 504. The

Complaint includes allegations of emotional distress injuries, see Complaint ¶ 34, at 8, as well as a

request for punitive damages, see id. ¶ 2, at 9.  APS moves the Court, pursuant to rule 12(c), to dismiss the Plaintiffs' claims for punitive damages and emotional distress damages.

## LEGAL ANALYSIS

The ADA and section 504 prohibit discrimination on the basis of a disability.  The ADA prohibits such discrimination by a public entity.  Section 504 prohibits discrimination by a recipient of federal funds.

The remedies for violations of these statutes are those found in Title VI of the Civil Rights Act of 1964 – legislation that prohibits racial discrimination in federally funded programming.  See, e.g., Barnes v. Gorman, 536 U.S. 181, 185 (2002); Alexander v. Sandoval, 532 U.S. 275, 280 (2001).  Because Title VI invokes Congress' power under the Spending Clause, the Supreme Court of the United States has instructed that the relationship between Congress and federal funding recipients is essentially contractual.  See, e.g., Davis v. Monroe County Bd. of Ed., 526 U.S. 629, 640 (1999)(interpreting Title IX); Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 286 (1998)(same).  Congress grants monies to eligible recipients conditioned on the recipients' promises to conduct, or refrain from conducting, themselves in a manner that comports with Congressional objectives.

Because of this relationship, the Supreme Court has not only "applied the contract-law analogy in cases defining the scope of conduct for which funding recipients may be held liable for money damages," but has also found it appropriate to use this analogy to define the scope of the available damages themselves.  Barnes v. Gorman, 536 U.S. at 186-87.  Accordingly, contract principles govern the remedies available against recipients of federal funding.  See id. at 187.  While "*all* contract law rules" may not apply to a Title VI relationship, the Supreme Court has said they

apply to questions of damages.  Id. at 186 (emphasis in original).  Contract law principles instruct that compensatory damages and injunctions are the only traditional forms of relief "available in suits for breach of contract."  Id.  See Restatement (Second) of Contracts §357, at 163 (Availability of Specific Performance and Injunction); 3 Williston on Contracts §1445-1450 (1920).

I.      **THE 2002 SUPREME COURT DECISION IN BARNES V. GORMAN INSTRUCTS THAT INDETERMINATE DAMAGES, SUCH AS PUNITIVE DAMAGES, ARE INAPPROPRIATE REMEDIES IN CASES ARISING FROM SPENDING CLAUSE LEGISLATION.**

The Supreme Court case of Barnes v. Gorman, addressing the issues of punitive damages, identified the analytical model for questions involving damages of an indeterminate magnitude.  In 2002, the Barnes v. Gorman court, applying contract principles, deemed an award for punitive damages an inappropriate form of relief in a suit based upon the ADA, the Rehabilitation Act, and Title VI.  See Barnes v. Gorman, 536 U.S. at 189 (holding that "punitive damages may not be awarded . . . in suits brought under § 202 of the ADA and § 504 of the Rehabilitation Act.").  Relying on traditional contract law principles, the Court instructed that a federal funding recipient is liable only for those damages for which the recipient had notice -- that is, the recipient is liable only for damages which were within the parties' contemplation at the time they entered the funding arrangement.  See id.  The Court held that, because it could not deem the recipients of federal funds to have entered into a contractual relationship that would subject them to punitive damages, punitive damages are unavailable under Title VI.  See id. at 188.

Because Congress has been silent with regard to remedies in this area, the Supreme Court has increasingly considered traditional contract law remedies as appropriate in cases arising from Spending Clause legislation.  See id. at 187-88.  Punitive damages are generally not available in suits

for breach of contract.  <u>See id.</u> at 237; Restatement (Second) of Contracts § 355, at 154; 3

Farnsworth On Contracts § 12.8, at 192 (2d ed. 1998).  The strong policy reasons underlying this rule

include: (i) such awards discourage efficient breach, which our judicial system encourages; (ii) the

law intends punitive damages to punish the wrongdoer while contract law is essentially "a law of strict

liability, [with an] accompanying system of remedies [that] operates without regard to fault," 3

Farnsworth, supra §12.8, 12.17, at 192-93, 284-90; and (iii) admitting proof of such indeterminate

damages undermines the general rule that a plaintiff must prove contract damages to a reasonable

certainty.  The Supreme Court's particular emphasis on this last policy reason in <u>Barnes v. Gorman</u>

reflects its belief that it is unreasonable to assume a funding recipient would have expected, accepted,

or acknowledged the possibility of, and exposure to, a punitive damages award (or multiple awards

in multiple cases) that has no ascertainable limit.  <u>See Barnes v. Gorman</u>, 536 U.S. at 188.  Such an

interpretation, suggests the Supreme Court, would undermine the basic principle of certainty that is

the validating foundation for the law of contract itself.  <u>See id.</u> at 187-88.

        After establishing that the ADA, the Rehabilitation Act, and Title VI do not contain an

express provision for punitive damages, the Supreme Court in <u>Barnes v. Gorman</u> examined whether,

despite the contractual nature of the Title VI funding relationship, implied punitive damages exposure

might nonetheless exist.  <u>See Barnes v. Gorman</u>, 536 U.S. at 186-88.  Because the parties'

relationship in this scenario is inherently different from the typical contract affiliation, the Court has

instructed that "community standards of fairness" govern the existence of implied punitive damages

exposure.  <u>Id.</u> at 188.  These "community standards of fairness" do not support the assumption that

a funding recipient would willingly expose itself to the unexpected and unlimited liability that possible

punitive damages awards implicate.  <u>Id.</u>

It is more likely, instead, that a funding recipient would refuse such monies if it weighed the funding benefit against the burden that a damages award could potentially consume not only all of the funding itself, but additional non-federal monies, as well.  See id.; Pennhurst State Sch. & Hosp. v. Halderman, 451 U.S. at 29-30, 30 n. 23; id. at 53-55 (White, J., dissenting in part).  Emphasizing the certainty principle of contract law, the Supreme Court suggested that punitive damages' indeterminate nature would alone be a cost-prohibitive risk that might either compromise an agency's ability to conduct federally funded programming or entirely preclude the implementation of a program that is entirely dependent upon federal monies.  See Barnes v. Gorman, 536 U.S. at 187-88.

The Supreme Court's decision in 1983 in Guardians Ass'n. v. Civil Serv. Comm'n of City of New York, 463 U.S. 582 (1983), bolsters this conclusion.  In Guardians Ass'n. v. Civil Serv. Comm'n of City of New York, the Supreme Court held that a funding recipient may withdraw from a Spending Clause program rather than "assume unanticipated burdens" inherent in remedying noncompliant conduct.  See 463 U.S. at 597.  The Supreme Court did not read into Spending Clause legislation the assumption that a recipient can never refuse federal monies rather than comply with Congressional conditions.

The Guardians Ass'n. v. Civil Serv. Comm'n of City of New York case stands for the proposition that a funding recipient has a right to terminate the relationship.  See id.  This right embodies the contractual nature of this relationship, and thus the Court appropriately applies traditional contract rules in these cases.  After analyzing both traditional contract doctrine and evolving principles of Spending Clause legislation cases, the Supreme Court in Barnes v. Gorman concluded that punitive damages are not recoverable in a claim under section 504 or Title II of the ADA because of their extraordinary and unexpected nature.  See Barnes v. Gorman, 536 U.S. at 188.

The Plaintiffs, based on the controlling federal case law on the ADA and section 504, do not oppose the Defendants' motion to dismiss their claims for punitive damages. While the Plaintiffs criticize the Supreme Court's reasoning in <u>Barnes v. Gorman</u> as convoluted and a distortion of congressional intent, they acknowledge that it is presently the law of the land.  The Plaintiffs note that, because of the Supreme Court's very broad ruling, they are not able to distinguish their case and argue for an exception.  The Plaintiffs correctly note that, if the law is to change, Congress will need to act, in the future, to add the remedy of punitive damages to persons who suffer intentional discrimination on the basis of disability in contravention of statutory law.

II.     **EMOTIONAL DISTRESS DAMAGES ARE NOT AN APPROPRIATE FORM OF RELIEF BECAUSE NEITHER TRADITIONAL CONTRACT LAW DOCTRINE NOR EVOLVING  PRINCIPLES OF SPENDING CLAUSE LEGISLATION AS <u>ARTICULATED IN THE BARNES V. GORMAN CASE SUPPORT THEM</u>.**

The Plaintiffs oppose the Defendants' motion to dismiss their claims for emotional distress damages.  In <u>Barnes v. Gorman</u>, the Supreme Court specifically addressed punitive damages.  The Plaintiffs contend that the Defendants are seeking to expand <u>Barnes v. Gorman</u> by arguing it opens the door for elimination of the compensatory damage claim of damages for emotional distress under the ADA and section 504.

The Plaintiffs contend that the Court's opinion, as the two separate concurring opinions suggest, do not provide the platform for this leap.  The concurrence by Justice Souter, in which Justice O'Connor joined, states: "I realize, however, and read the Court's opinion as acknowledging, that the contract-law analogy may fail to give such helpfully clear answers to other questions that may be raised by actions for private recovery under Spending Clause legislation, such as the proper measure of compensatory damages."  536 U.S. at 191.  The opinion by Justice Stevens, in which

-6-

Justice Ginsburg and Justice Breyer joined, concurring in the Court's judgment, reinforces the proper confines of the Court's opinion: "The Court fortunately does cabin the potential reach of today's decision by stating that '[w]e do not imply, for example, that suits under Spending Clause legislation are suits in contract, or that contract-law principles apply to all issues that they raise[.]'" Id. at 193 n. 3.

The Court believes that the Plaintiffs go too far in arguing that the Barnes v. Gorman decision provides no support for elimination of emotional distress damages from compensatory damages available for intentional discrimination under the ADA and under section 504. While the Court cannot say that Barnes v. Gorman's holding decides the issue presented here, the Court believes the Supreme Court's analysis applies equally to damages for emotional distress, which, like punitive damages, generally are not available in an action for breach of contract. This Court must analyze a question about the scope of appropriate damages under the umbrella of both traditional contract doctrine and evolving principles of law governing these special contract-like cases.

There is one decision since Barnes v. Gorman that supports the view that emotional damages are not available; there are also decisions before Barnes v. Gorman that support such a position.

### A.  THE BARNES V. GORMAN ANALYSIS APPLIES TO DAMAGES FOR EMOTIONAL DISTRESS.

The Plaintiffs contend that the Barnes v. Gorman analysis continues to support an award of full compensatory damages, including emotional distress damages in the category of compensatory damages. This argument, however, presumes that "compensatory damages" necessarily encompasses emotional distress damages.

The Supreme Court in Barnes v. Gorman emphasized that its decision precluding punitive

damages for claims under the Rehabilitation Act rested on its determination that contract law principles guide the determination for what damages are available. See Barnes v. Gorman, 536 U.S. at 186.  The Supreme Court also clarified that, while compensatory damages are available in Rehabilitation Act cases, it defines that term as those damages reasonably necessary to place the complainant in the position he or she would have been in had the violation not occurred.  See id. at 189.

   The United States District Court for the Middle District of Florida, in an opinion after the Barnes v. Gorman decision, considered whether emotional distress damages should be available under Title VI taking into account the Supreme Court's guidance.  See Witbeck v. Embry-Riddle Aeronautical University, 269 F. Supp. 2d 1338 (M.D. Fla. 2003).  The district court determined that the Supreme Court's limitation of damages to "compensatory damages" restricts the available damages to actual compensation for pecuniary damages.  See id. at 1340 ("His damages are limited to compensatory damages such as expenses and attorney's fees.").

   This Court agrees with the district court in Florida's characterization of the Supreme Court's guidance.  In Barnes v. Gorman the Supreme Court of the United States  ruled that the only damages available under Title VI are compensatory damages.  Thus, the Supreme Court's ruling and analysis prohibiting punitive damages also applies to emotional distress damages and such damages are not available under Title VI.

   **B.   TRADITIONAL CONTRACT LAW DOCTRINE DOES NOT ALLOW DAMAGES FOR EMOTIONAL DISTRESS UNLESS THE PARTIES CONTEMPLATED THESE DAMAGES AT THE TIME THEY ENTERED THE CONTRACT.**

Emotional distress damages, like punitive damages, are generally unavailable in actions based

-8-

on contracts.   Traditional contract law doctrine does not favor awards for emotional distress damages.  See 3 Farnsworth, supra § 12.17, at 288.  "Damages for emotional disturbance [in breach of contract cases] are not ordinarily allowed. Even if they are foreseeable, they are often particularly difficult to establish and to measure."   Restatement (Second) of Contracts § 353, cmt. a, at 149. There are two limited exceptions to this rule: (i) one for damages accompanying physical injury or loss; and (ii) another for mental anguish "of such a kind that serious emotional disturbance was a particularly likely result [at the time of the formation of the contract]."  Id.  See Restatement (Second) of Contracts 351(1), cmt. a, at 135 (1981)("A contracting party is generally expected to take account of those risks that are foreseeable at the time he makes the contract.  He is not, however, liable in the event of breach for loss that he did not at the time of contracting have reason to foresee as a probable result of such a breach."); 11 Williston, On Contracts § 1347-1348 (3d ed. 1957).  The doctrine instructs that if damages are too speculative they will not be awarded.  See Silva v. Albuquerque Assembly Dist. Freeport Warehouse Corp., 106 N.M. 19, 20, 738 P.2d 513, 514 (1974)(holding "damages for emotional distress are not recoverable in an action for breach of contract, whether express or implied, in the absence of a showing that the parties contemplated such damages at the time the contract was made.").

The denial of recovery for emotional distress damages unaccompanied by physical damages is a firmly rooted limitation notwithstanding a plaintiff's ability to meet the certainty requirement.  See 3 Farnsworth, supra § 12.17, at 288 ("A limitation more firmly rooted in tradition is that generally denying recovery for emotional disturbance, or 'mental distress,' resulting from breach of contract, even if the limitations of foreseeability and uncertainty can be overcome.").  The unforeseeable and indeterminate nature of these damages, much like the case of punitive damages, are the prevailing

characteristic that renders their award in breach of contract cases extraordinary and unexpected.  <u>See</u> <u>id.</u>

Because there are no physical injuries or losses in this case, only the second exception is potentially applicable.  There are few cases, however, where courts have held a contract falls under this second exception.  <u>See</u> 22 Am. Jur. 2d, Damages § 48, at 71-72 (1988)(listing circumstances that do not fall under this exception).

Compensation for mental suffering unaccompanied by physical loss applies only in extreme cases where the plaintiff's emotional well-being is already at issue at the time of the contract's formation.  For instance, when the contract itself's express intent is either to enhance or to protect a plaintiff's mental state, a breach thereof may implicate emotional distress damages.  <u>See</u> Restatement (Second) of Contracts § 353, at 159.  It is only where peace of mind and freedom from worry are part of the bargain that emotional distress damages become applicable.

The classic contexts in which such awards are, indeed, made concern breaches involving "carriers and innkeepers with passengers and guests, contracts for the carriage or proper disposition of dead bodies, and contracts for the delivery of messages concerning death."  Restatement (Second) Contracts §353, cmt. a, at 149.  These cases come from both federal and state courts interpreting the Restatement, but all agree that emotional distress damages awards are only appropriate when the case inevitably implicated the plaintiff's mental state at the time of the contract's formation.  <u>See</u> <u>Hirst v.</u> <u>Elgin Metal Casket Co.</u>, 438 F. Supp. 906, 908 (D. Mont. 1977)(finding that mental anguish reasonably resulted when deceased family member's leakproof casket leaked); <u>Allen v. Jones</u>, 163 Cal. Rptr. 445, 448 (Ct. App. 1980)(finding that it was particularly likely that cremated remains lost in transit would cause emotional distress).

The case here does not implicate the issues that the courts have deemed to warrant emotional distress damages awards.  Primarily, the contractual relationship between Congress and the funding recipient, on behalf of third-party beneficiaries, is not of a personal nature.  The agreement between the federal agency and the recipients is struck without regard to any particular person.

Further, the contractual relationship between Congress and the funding recipient does not involve the life or death issue which ordinarily suggests that a breach of one of the funding conditions -- by virtue of a discriminatory practice that the ADA and the Rehabilitation Act prohibit -- will particularly, or foreseeably, result in the mental anguish of the third-party beneficiary.

### C. EVOLVING PRINCIPLES OF SPENDING CLAUSE LEGISLATION DO NOT MAKE AVAILABLE EMOTIONAL DISTRESS DAMAGES FOR BREACHES OF FUNDING CONDITIONS.

In 1992, the Supreme Court in Franklin v. Gwinnett County Pub. Sch., 503 U.S. 60 (1992), found that the plaintiffs are entitled to be made whole and, therefore, compensatory damages are appropriate forms of relief.  See 503 U.S. at 69.  That case, however, did not reverse long-standing judicial attitudes regarding emotional distress damages awards in contract cases.  The compensatory damages that Franklin v. Gwinnett County Pub. Sch. found appropriate do not include extraordinary damages, such as punitive awards and emotional distress damages.  See Barnes v. Gorman, 536 U.S. at 188 ("[I]t must be concluded that Title VI funding recipients have not, merely by accepting funds, implicitly consented to liability for punitive damages."); Bradford v. Iron County C-4 Sch. Dist., 1984 WL 1443, at * 7 (E.D. Mo. 1984)(holding that emotional distress damages are not recoverable under section 504).

Even if the Court were to assume that federal-state coordinated programming pursuant to Spending Clause legislation implicates a plaintiff's mental state, the courts have determined that the

relationship between Congress and the funding recipient is different, and, accordingly, courts have not historically recognized emotional distress damages as a legitimate form of relief therein.  See Americans Disabled for Accessible Public Transp. v. Skywest Airlines, Inc., 762 F. Supp. 320, 325 (D. Utah 1991)("Damages for emotional distress or mental anguish . . . are unavailable under the Rehabilitation Act."); Bradford v. Iron County C-4 Sch. Dist., 1984 WL 1443, at * 9 ("[T]he Court concludes that damages for mental anxiety and humiliation are not recoverable under § 504 of the Rehabilitation Act for employment discrimination.").  In Bradford v. Iron County C-4 Sch. Dist., the court instructed that, even if compensatory damages apply in Title VI and Title VII cases, the phrase "compensatory damages" cannot properly describe emotional distress damages in cases arising from violations of the Rehabilitation Act and Title VI.  Id. at * 6.

Applying the Barnes v. Gorman analysis, emotional distress damages are not available for an alleged violation of Title II of the ADA or section 504.  Spending Clause legislation generally has as its objective the delivery of services to third-party beneficiaries, not the assurance of peace of mind. See Barnes v. Gorman, 536 U.S. at 188.  As stated above, the beneficiaries' mental states were not at issue at the time of the contract's formation.

Further, the issue of emotional distress damages in these cases aligns almost exactly with the issue of punitive damages in Barnes v. Gorman.  First, as with punitive damages, courts traditionally disfavor emotional distress damages in common law contract actions.  Second, like punitive damages, emotional distress damages are indeterminate in scope and do not properly comport with the certainty requirement that the law of contract embodies.  Lastly, emotional distress damages tend to be punitive in nature. See 5 Corbin on Contracts §1076, at 377 ("Mental suffering is not itself a pecuniary harm; and it can scarcely be said to be measurable at all in terms of money.").  This similarity renders them

-12-

an inappropriate remedy in these cases.  See, e.g., Krisa v. Equitable Life Assur. Soc., 109 F. Supp.

2d 316, 323 (M.D. Pa. 2000)(noting that emotional distress damages "closely resemble punitive

damages")(quotation marks and citation omitted); Bradford v. Iron County C-4 Sch. Dist., 1984 WL

1443, at * 7 ("[D]amages for mental suffering and humiliation are difficult to measure at best, are

often sizeable, and have been editorialized as gratuitous bonuses or prize money for prosecuting a

successful suit.").

A 1985 Idaho Supreme Court decision summarizes this perspective of emotional distress

damages, explaining:

> [T]here is no significant, if in fact, any difference between conduct by a defendant
> which may be seen to justify an award of punitive damages, and conduct which may
> justify an award of damages for emotional distress.  Justification for an award of
> damages for emotional distress seems to lie not in whether emotional distress was
> actually suffered by a plaintiff, but rather in the quantum of outrageousness of the
> defendant's conduct. [Even where] a plaintiff may in fact have suffered extreme
> emotional distress, accompanied by physical manifestation thereof, no damages are
> awarded in the absence of extreme and outrageous conduct by a defendant.

Brown v. Fritz, 699 P.2d 1371, 1376 (Idaho 1985).

The legitimacy of the law of contract rests upon its certainty.  See id.; Hadley v. Baxendale,

156 Eng. Rep. 145 (Ex. 1854).  It is not reasonable to assume that community standards of fairness

would expose a funding recipient to unlimited liability, especially where a depletion of federal monies

would result by enriching one plaintiff to the detriment of the many remaining third parties, who

benefit from the program.  As Justice Scalia stated in Barnes v. Gorman, while "compensatory

damages alone 'might well exceed a recipient's level of federal funding,' punitive damages on top of

that could well be disastrous."  536 U.S. at 188 (citing Gebser v. Lago Vista Indep. Sch. Dist., 524

U.S. 274, 290 (1998)).

Emotional distress damages are not appropriate in cases arising from Spending Clause legislation because of their immeasurabililty at the time of the contract's formation, because the courts historically have disfavored them as a form of relief in breach of contract cases, and because they are punitive in nature.

In conclusion, punitive damages and emotional distress damages are an inappropriate relief in actions brought pursuant to Title II of the ADA and §504.  According to the Supreme Court's analysis from the 2002 <u>Barnes v. Gorman case</u>, damages that courts have not historically awarded in breach of contract cases because of their indeterminate and punitive nature are not appropriate remedies.  Such awards could damage federally funded programming.

**IT IS ORDERED** that the Defendant Albuquerque Public Schools Board of Education's motion is granted and the Plaintiffs' claims for punitive damages and for emotional distress damages are dismissed.

_____
UNITED STATES DISTRICT JUDGE

<u>Counsel</u>:

Gail Stewart
Albuquerque, New Mexico

 *Attorney for the Plaintiffs*


Michael L. Carrico
Modrall, Sperling, Roehl,
 Harris & Sisk, P.A.
Albuquerque, New Mexico

 *Attorneys for the Defendants*

-14-